Benjamin L. Webster, Bar No. 132230
bwebster@littler.com
Nathaniel H. Jenkins, Bar No. 312067
njenkins@littler.com
Lauren J. Orozco, Bar No. 332880
lorozco@littler.com
LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
Telephone:    916.830.7200
Fax No.:      916.561.0828

Attorneys for Defendant
MUFG UNION BANK, N.A. (ERRONEOUSLY SUED
AS MUFG UNION BANK)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BONAZZA,<br><br>Plaintiff,<br><br>v.<br><br>MUFG UNION BANK,<br><br>Defendant. | Case No. 23-CV-01161-JCS<br><br>**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Trial Date:      None Set<br>Complaint Filed:   February 23, 2023 |

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

Defendant MUFG Union Bank, N.A. (erroneously sued as MUFG Union Bank) ("MUFG" or "Defendant") by and through its attorneys of record, Littler Mendelson, A Professional Corporation, hereby answers the Complaint filed by Plaintiff Michael Bonazza ("Bonazza" or "Plaintiff") and admits, denies, avers, and alleges as follows. For the sake of clarity, Defendant has taken a copy of Plaintiff's Complaint (which did not contain numbered paragraphs) and inserted paragraph numbers 1 through 7 in order to clearly demarcate which paragraph Defendant is responding to (please see "**Exhibit A**" hereto), as provided below.

## "QUESTION FOR THE COURT" SECTION

1.      With respect to Paragraph 1, the allegations therein set forth questions, arguments, and conclusions of law, not allegations of fact that require a response. To the extent Defendant is required to respond to any of the questions, arguments, or conclusions of law, Defendant denies each and every allegation in Paragraph 1.

## "DETAILS" SECTION

2.      With respect to Paragraph 2, Defendant admits that Plaintiff voluntarily accepted a temporary position in/around June 2022 that was to last for a period of two years, and avers that Plaintiff voluntarily resigned well before the two-year mark. Defendant further admits that Plaintiff agreed to be paid and was paid an annual salary of $106,000 while in that temporary role. Defendant denies the remaining allegations in Paragraph 2.

3.      With respect to Paragraph 3, the allegations therein set forth vague and ambiguous arguments and conclusions of law, not allegations of fact that require a response. To the extent Defendant is required to respond to any of the arguments or conclusions of law, Defendant denies each and every allegation in Paragraph 3.

4.      With respect to Paragraph 4, Defendant admits that Plaintiff is a "person who is not in a protected category." The remaining allegations therein set forth vague and ambiguous arguments and conclusions of law that do not require a response. To the extent a response is required, Defendant denies each and every remaining allegation in Paragraph 4.

5.      With respect to Paragraph 5, Defendant admits that Plaintiff's annual salary was $106,000, starting in/around June 2022 (until Plaintiff's voluntary resignation in/around September

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA  95814
916.830.7200

DEFENDANT'S ANSWER
TO PLAINTIFF'S COMPLAINT                    2                    CASE NO. 23-CV-01161-JCS

2022). To the extent the remaining arguments and conclusions of law require a response, Defendant denies every remaining allegation in Paragraph 5.

6.    With respect to Paragraph 6, Plaintiff alleges that he was told his contract "wasn't structured properly" because he is "not part a protected demographic outside of being white and male," but because Plaintiff does not identify who allegedly made the comment, Defendant has insufficient information to admit or deny the allegation and, on that basis, Defendant denies the allegation. The remaining allegations do not require a response, but to the extent a response is required, Defendant denies every remaining allegation in Paragraph 6.

7.    With respect to Paragraph 7, Defendant has insufficient information to admit or deny Plaintiff's allegations about "introducing Microsoft desktop automation" to Defendant's senior leadership and, on that basis, Defendant denies the allegations. The remaining allegations are vague and ambiguous arguments and conclusions of law, not allegations of fact that require a response. To the extent a response is required, Defendant denies each and every remaining allegation in Paragraph 7.

## RESERVATION

Document 1-1 appears to be an Exhibit to the Complaint. Therefore, Defendant does not respond specifically to any of the allegations in the Exhibit, Document 1-1, except to deny any contention therein of unlawful conduct on the part of Defendant.

## FIRST DEFENSE

1.    As a first separate defense, Defendant alleges that the Complaint is barred because it does not state facts sufficient to constitute a claim upon which relief can be granted.

## SECOND DEFENSE

2.    As a second separate defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff seeks to recover for conduct that occurred outside of the applicable limitations periods (including limitations periods for administrative charge filings) and to the extent that the applicable statute of limitations have expired, including but not limited to California Government Code sections 12960 and 12965, California Code of Civil Procedure sections 335.1, 338, 340, and 343, and/or analogous federal provisions applicable to Title VII, 42 USC § 2000 *et seq*.

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA  95814
916.830.7200

DEFENDANT'S ANSWER
TO PLAINTIFF'S COMPLAINT                    3                    CASE NO. 23-CV-01161-JCS

**THIRD DEFENSE**

3.      As a third separate defense, Defendant alleges that Plaintiff's claims are barred to the extent he failed to fully exhaust his administrative remedies and/or to the extent his civil claims exceed the scope of any administrative complaint that he filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), California Civil Rights Department ("CRD") (formerly known as the Department of Fair Employment and Housing), and/or any other applicable agency.

**FOURTH DEFENSE**

4.      As a fourth separate defense, Defendant alleges that Plaintiff's claims and damages are barred and/or reduced to the extent any actions taken by Defendant would have or could have been independently based upon after-acquired evidence of Plaintiff's misconduct.

**FIFTH DEFENSE**

5.      As a fifth separate defense, Defendant alleges that Plaintiff is precluded from recovering punitive damages from Defendants, either in whole or in part, under California Civil Code section 3294 or under any other statutes of similar effect that may be applicable, and/or by Defendant's Constitutional rights, because Plaintiff has not stated with the requisite specificity (nor can Plaintiff establish) that any of Defendant's officers, directors, managing agents, or other actors acted with or ratified acts taken with malice, oppression, or fraud.

**SIXTH DEFENSE**

6.      As a sixth separate defense, Defendant alleges that Plaintiff's claims are barred to the extent that Defendant took immediate and appropriate corrective action to prevent any alleged unlawful conduct from occurring and, even if any decisions concerning Plaintiff were based in part on unlawful grounds (which Defendant denies), Defendant would have reached the same decisions absent any alleged unlawful grounds. Defendant does not contend that it subjected Plaintiff to any adverse employment actions but Defendant nevertheless pleads this defense because it had legitimate, non-discriminatory grounds for all of its actions.

**SEVENTH DEFENSE**

7.      As a seventh separate defense, Defendant alleges that all actions taken with regard to Plaintiff were in good faith without discrimination, harassment, or retaliation, and were for legitimate

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

DEFENDANT'S ANSWER
TO PLAINTIFF'S COMPLAINT                    4                    CASE NO. 23-CV-01161-JCS

business reasons based upon all relevant facts and circumstances known by Defendant at the time of the action. Again, Defendant does not contend that it subjected Plaintiff to any adverse employment actions but Defendant nevertheless pleads this defense because it had legitimate, non-discriminatory grounds for all of its actions.

**EIGHTH DEFENSE**

8.     As an eighth separate defense, Defendant alleges that Plaintiff is barred from recovery, in whole or in part, to the extent he failed to mitigate his alleged damages.

**NINTH DEFENSE**

9.     As a ninth separate defense, Defendant alleges that each purported cause of action alleged in the Complaint, or some of the causes of action, are barred pursuant to the avoidable consequences doctrine because Defendant exercised reasonable care to prevent and promptly correct any discriminatory or otherwise unlawful behavior including, but not limited to, having in place anti-discrimination policies and procedures. Plaintiff unreasonably failed to follow Defendant's policies and procedures to report or prevent the conduct and alleged harm described in the Complaint and, therefore, he cannot recover for any of his alleged harm.

**TENTH DEFENSE**

10.     As a tenth separate defense, Defendant alleges that, to the extent Plaintiff seeks recovery for emotional and/or physical damages stemming from his employment, if any, such claims and damages are preempted by his exclusive remedy under the California Workers' Compensation Act, California Labor Code sections 3600 *et seq*.

**ELEVENTH DEFENSE**

11.     As an eleventh separate defense, Defendant alleges that Plaintiff's claims are barred to the extent his damages were caused by his own acts and/or omissions or by other factors not caused by Defendant.

**TWELFTH DEFENSE**

12.     As a twelfth separate defense, Defendant alleges that, to the extent Plaintiff suffered harm/damages from conduct undertaken by Defendant, or anyone acting on Defendant's behalf (which Defendant denies), such conduct was beyond the course and scope of said agent's employment, and

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

DEFENDANT'S ANSWER
TO PLAINTIFF'S COMPLAINT                    5                    CASE NO. 23-CV-01161-JCS

specifically contrary to and in disregard of Defendant's interest. In which case, Defendant did not know nor should it reasonably have known of said unlawful conduct. Therefore, Defendant cannot be held vicariously liable for any act or omission of any person, by way of *respondeat superior*, agency, or otherwise.

## THIRTEENTH DEFENSE

13. As a thirteenth separate defense, Defendant alleges that Plaintiff's claims and/or prayer for damages are barred to the extent they are subject to the equitable doctrines of estoppel, consent, waiver, laches, unclean hands, and/or any other applicable doctrines.

## FOURTEENTH DEFENSE

14. As a fourteenth separate defense, Defendant alleges that if Plaintiff is judged to be entitled to any recovery (which Defendant denies), any award to Plaintiff must be offset by all sums received by Plaintiff from any source, including but not limited to, supplemental employment income.

## FIFTEENTH DEFENSE

15. As a fifteenth separate defense, Defendant alleges that Plaintiff's claims are barred to the extent he failed to exhaust his administrative remedies by failing to submit a timely claim to the EEOC/CRD and obtaining a "right to sue" letter as it relates to Title VII/FEHA claims that Plaintiff has failed to include in the Complaint.

## RESERVATION OF ADDITIONAL DEFENSES

Defendant alleges that the Complaint does not describe the claims or facts being alleged with sufficient particularity to permit Defendant to ascertain what other defenses may exist. Defendant will rely on any and all further defenses that become available or appear during discovery in this action and specifically reserves the right to amend this Answer or file a new Answer for purposes of asserting such additional defenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant requests that the Court:

(1)   Enter judgment in Defendant's favor on Plaintiff's Complaint;

(2)   Dismiss Plaintiff's Complaint with prejudice and award Plaintiff nothing by way of the Complaint;

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

DEFENDANT'S ANSWER
TO PLAINTIFF'S COMPLAINT                    6                    CASE NO. 23-CV-01161-JCS

(3)    Award Defendant all recoverable costs associated with the defense of this action;

(4)    Award Defendant its reasonable attorneys' fees associated with the defense of this action; and

(5)    Award Defendant such other relief as the Court deems just and proper under the circumstances.

Dated: June 9, 2023

LITTLER MENDELSON, P.C.

_/s/ Nathaniel H. Jenkins_
Benjamin L. Webster
Nathaniel H. Jenkins
Lauren J. Orozco
LITTLER MENDELSON, P.C.
Attorneys for Defendant
MUFG UNION BANK, N.A.
(ERRONEOUSLY SUED AS MUFG UNION BANK)

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

# EXHIBIT A

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

# EXHIBIT A

ORIGINAL

United States District Court for the District of Hawaii

~~United States District Court for the District of Oakland~~    I F P    S U B M .

*Plaintiff Information:*     M B

Michael Bonazza

808-853-9023

2092 Kuhio Avenue Apt 2402

Honolulu, HI 96815

*Defendant Information:*

MUFG Union Bank

1221 Broadway

Oakland, CA 94612

*Contents:*

1) *Complaint,*
2) *EEOC Inquiry,*
3) *EEOC Charge*
4) *EEOC Right to Sue*
5) ~~*Civil Cover Sheet*~~ M B
6) *Filing Fee*
7) *Summons*

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

FEB 2 3 2023

at /l o'clock and 30 min. A M
John A. Mannle, Clerk Ls

CC: JMS ( Filon

**CV23  00103** JMS KJM

**Question for the court:**

Is it not discriminatory to introduce high-impact business value only to be told you can't benefit economically because of your sex and your race? Does it not cause unnecessary hardship to use identify politics, which forces me into the judicial system, instead of properly structuring a business transaction? I don't believe this is a conversation about merit anymore. It's a conversation about pay discrimination that has caused a major disruption to my life.

**Details:**

I believe I was subject to pay discrimination on the basis of being white and male when my employment was not made permanent (an option in the contract), which limited my contract to 2 years, that in aggregate would have paid me $212,000 in total and in no way reflected the business value I helped introduce to the bank i.e. 2 million dollars over 12 months per a KPMG estimate. This despite me asking numerous times for a permanent role in the organization – before, during and after the contract -, which normally lasts about five years and includes the ability to bonus (my contract did not). I was also effectively told that jobs which are long-term and above the cost of living are being reserved for women and minorities which is consistent with messaging from my time at the bank in 2017.

1

2

3

It is psychologically de-motivating to bring new and high-impact business value only to be evaluated based on a demographic that has not been given priority for the past 5 years in promotional opportunities - and when you consider white males are already adequately represented in a protected category (the over 40 bracket). Because I was not given better terms for employment, I had little opportunity for growth as just another temporary white worker under 40. Devaluing my labor also led to real-world hardship as evidenced by a failed home purchase, a recent employment gap and my inability to find comparable work, which have all been difficult events to endure physically and psychologically.

4

I think what the 2022 contract at the bank made clear (if it didn't already in 2017) is that a policy focused on diversity and inclusion can be racist and sexist if new business value is introduced by the person who is not in a protected category, which ultimately leads to several disadvantages such as a being put in a contract that is 1) short-term 2) underpaid and 3) does not allow for bonus - all while living under conditions that are less than ideal. On the other hand, if I didn't create new business value, and I just sued based on demographic - I would concede that this case would be impossible.

5

That is why, considering my unique role introducing excel desktop automation into back-office accounting & reporting operations, I am seeking in the form of a settlement 8 years of top-level assistant vice president pay (approx 106k) to reflect the premium of my contribution. Less the salary I was already paid (approx 30k) for the automation work performed during my contract (106k per year) between June 2022 and September 2022.

About $818,000 before tax

6

I would like the court to consider the challenging corporate political environment across the country as well as consider that I am prepared to defend (with email evidence) a settlement of up to 1 million dollars based on my traceable role in creating business value for the bank (50% of KPMG's initial 1.9 million dollar estimate). My 2022 employment contract could and should have been structured properly to benefit all parties. I don't just believe my contract wasn't structured properly because I am not part of a protected demographic outside of being white and male - I was outright told that.

7

In the absence of protection over the past 5 years, I am hopeful that in 2023 and beyond - being white and male are traits that are still protected under the law. Introducing Microsoft desktop automation to senior leadership at MUFG Union Bank objectively led to a top 3 corporate FP&A event in the history of corporate – I don't think any value should be lost on account of someone's demographic. Imagine a world where Steph Curry doesn't get paid his economic value in the NBA because of his sex and his race - regardless of talent or how many tickets he sold.

I don't want to live in that world, either.

Mike R        2/25/2025
Michael Borazza

# EEOC (Inquiry) Number: **555-2023-00720**

## Inquiry Information

### INQUIRY OFFICE

**Receiving:** Honolulu Local Office

**Accountable:** Honolulu Local Office

### POTENTIAL CHARGING PARTY

**Name:** Mr. Michael Bonazza

**Address:** 2092 kuhio avenue 2402
HONOLULU, HI 96815

**Year of Birth:**

**Email Address:** mike.bonazza@gmail.com

**Phone Number:** 808-853-9023

### POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled?** I do not have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** White,

**National Origin:** Italian

### RESPONDENT/Employer

**Organization Name:** MUFG Union Bank

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Address:** 1221 BROADWAY
OAKLAND, CA 94612

**County:**

**Phone Number:**

### LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Address:**

②

## RESPONDENT CONTACT

**Name:** Mary Hoerle

**Email Address:**

**Phone Number:**

**Title:** Chief Human Resource Officer

## REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 09/30/2022

**Reason for Complaint:** Race, Sex (including pregnancy, sexual orientation and gender identity), Color

**Pay Disparity:** Yes

**Location of Incident:** California

**Submission (initial inquiry) Date** 01/24/2023

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:**

**Charge Number:** 555-2023-00720

**Claim previously filed as complaint with another Agency?** Yes

**Agency Name:** Department of labor - Unemployment benefits in Hawaii State

**Approximate Date of Filing:** 12/27/2022

**Nature of Complaint:** I left the contract at MUFG Union Bank because it was discriminatory and would not allow me to provide for my family who lives in Hawaii. I am seeking unemployment benefits/temporary income from the state while i get back on my feet here in Hawaii.

## Adverse Action(s)

I believe the facts show that neither KPMG nor MUFG?s bank staff will be able to leverage their industry experience or superior numbers to offset the unique & critical value that I provided between 2021 and 2022 ? I.e. introducing Microsoft desktop automation into back-office accounting & reporting operations. And I believe my temporary contract was not extended because of my race (white/european) and my sex.

As such, I am submitting a 1.3 million dollar claim - ~~most of~~ which is 50% of KPMGs initial 1.9 million dollar automation estimate that was communicated verbally on a call with myself & my director. ~~The second part of the claim in the amount of 300k is equivalent to three years of Vice President level salary (between 110k-150k) that I missed out on due to a deliberately discriminatory company policy.~~ ~~Additionally, I am seeking money that represents the extraordinary value I missed~~

## APPOINTMENT

**Appointment Date and time:** 02/14/2023 10:15:00 HST

**Interview Type:** InOfficeByVideo_

# Supplemental Information

## What Reason(s) were you given for the action taken against you?

During my 2022 contract at MUFG, I asked senior leadership for a full-time Vice President role. I was told that I do not fit their 'profile' and there is a long-standing company policy to replace white leadership with diversity. The bank first communicated this deliberately discriminatory policy in 2017, which adversely impacted my demographic 5 years ago and continues to do so. I recall during a 2017 Oakland all-hands meeting, after it was announced there would be a greater focus on diversity in management (i.e. jobs above the cost of living given to protected demographics), one person said something along the lines of 'we should be rewarding people on merit, regardless of sex/ethnicity/etc', which largely went unheard.

If jobs are being reserved for certain demographics - that means they are not being made available to other demographics who are equally qualified - which to me is the very definition of discrimination and is most definitely not equal opportunity employment. Again, the timeline of me first introducing automation in August 2021, my poor contract terms in 2022 and the company line regarding diversity in leadership was just history repeating itself, but this time I was unfairly locked out of future employment due strictly to my demographic and without regard to my traceable role in creating business value for the bank.

After the credit card project in 2016, I bonused 20k at MUFG to reflect the value of my contribution on that project. If I can prove via emails that I sold the bank on the idea of Microsoft Desktop Automation - and that no one else was involved in the initial exchange between myself and senior leadership on the topic - and the exchange ultimately led to a 2 million dollar FP&A investment - but I got a below the cost of living, short-term contract, am I not entitled to a settlement for creating value? Most especially if the reason I was not offered a longer-term role implementing automation was because I don't fit their target demographic as evidenced by their payroll and company messaging?

Please make no mistake about the seriousness of this claim. If I don't win a settlement here based on value created, I will be sick, homeless or dead inside of two years. That may not have been the reality for prior generations, but it is the reality for me. My parents have made it quite clear that they will not support me financially now or in the future. And the job market has made it quite clear what my demographic is worth on a level playing field - much less than my diverse peers - which is why I sought to (temporarily) make the playing field less level when I introduced desktop automation to MUFG.

Without getting overly personal, if the bank's leadership doesn't think my 1.3 million dollar claim is 'fair' due to years of experience compared to my peers - I would challenge anyone's resume in any generation on the basis of value added to that company considering my role in the introduction of desktop automation as well as my prior experience and trajectory there. I feel I was taken advantage of in my late 20s and I expect that not to happen again in this claim. In fact, I am hoping for a transaction that puts me ahead - not one that just 'catches me up' because, again, I expect to continue to face adverse conditions in the labor market when this is over.

If the federal government allows (i.e. enables), I would not be surprised if MUFG attempts to stall this process as long as possible to avoid addressing the issue because they know it puts a lot of pressure on the individual. Specifically, I saw that the federal government's timeline to file a charge is in July, which is quite a bit longer of a horizon than I was hoping for since I have been out of work/looking for work in Hawaii since September 2022. What that means is, MUFG can theoretically sit on my case all year obviously knowing the implications for myself and my family and for the sake of saving money. If they weren't holding on to settlement money, I wouldn't care as much and chalk the whole thing up to corporate politics and playing the demographic-numbers game as I believe they did in 2017.

However this time, I don't believe corporate politics tells the entire story as evidenced by the go-forward value I introduced which - unless proven otherwise - would not have existed without my involvement. All you have to do is look at my 2022 contract terms - which were short-term, below the cost of living and even included me having to physically come back to the Bay Area (instead of working remotely from Hawaii when everyone - including everyone my age - was working remotely and management knew I had a girlfriend in Hawaii) and which forced me to work remotely from an Airbnb during my contract - to understand the extent to which my demographic didn't and continues not to matter.

Understanding that it's just business, lets do business.

Additional 2017 background:

I recall feeling disappointed with the 2017 policy change as I had just come off a highly challenging, very progressive credit card acquisition project the year before - which went extremely well. I chose to take the 2016/17 credit card

project in the first place because I thought it would put me in a better position to win a next-level role - a.k.a a loan portfolio manager job. A loan portfolio manager role did come up in 2017 after the credit card project, but after I interviewed for the job, it was given instead to a woman from outside of the bank. I was subsequently put in several undefined roles including expense accruals, the CRA (community reinvestment act) portfolio, a loan delinquency project and a business systems project.

These were all jobs far away from any real loan portfolio work (the roles that make money) and even in aggregate wouldn't have stood up in my next performance review. Since I couldn't obtain the pay and stability I was looking for at MUFG, I was ultimately forced to exit to try and find work outside the bank that would allow me to earn a salary consistently above the cost of living.

----------

Emails:
From: Chris Escher (MUAH Controller
Aug 19 2021
Wow, lots to read through and think about. I have a couple people looking at this now ? could be very exciting for user-level configuration

From: Chris Escher (MUAH Controller)
Aug 13 2021
Thanks for sharing your experiences with the tool. sounds pretty exciting. I was super stoked about RPA, attended a multi-day seminar on it, did a pilot or two. I think the challenge is that the more process (controls) you stack on top of the software, the less compelling it becomes. So we havent progressed much further. I would love the day when someone shows up for work and its, heres your computer, and these are the 5 bots that are assigned to you (or whatever ? you get my drift) This definitely sounds like a step in that direction.

From: Chris Escher (MUAH Controller)
On Wed, Aug 11, 2021 at 6:08 AM
thanks for the note! I'm losing a grip on my technology skills. But this looks like a great engine for desktop automation, and one I'll ask the team to check out more closely. One of the challenges for an institution with our complexity is that RPA requires service accounts to operate - which bring their own set of infosec concerns (and therefore risk management processes) - so performing options with the user's credentials would dramatically speed up time to deployment.

From: Michael Bonazza
Monday, August 2, 2021 11:39 AM
Hey Chris, I hope all is well. Im sure youre already ahead of the game on this, but I wanted to share a recent experience I had while on a contract. I was looking at ways to make AP more efficient and I stumbled across Microsoft power automate, which as youre probably aware is Microsofts RPA tool for the masses. I think they bought a company last year in May that made a product called ?winautomation? that enabled desktop automation which microsoft is now calling power automate desktop (formerly MS Flow)

## Was anyone in a similar situation treated the same, better, or worse than you?

Way better than me. My diverse colleagues (Jason & Kate) enjoy permanent jobs above the cost of living and will no doubt be working in those jobs until they are old. Evan who is also close to my age is white, but I believe he is also Chinese, which happens to be the same mix as Chris' (controller) kids. And not white European which is my demographic.

Kyle Goud (I think he is white/european) was part of the team before I got there and had apparently transitioned to another group outside the controllers before I arrived. I'm not sure how old he was, but if he was 30-35, was he offered a path to vice president i.e. a salary above the cost of living like Jason Tsui and Kate or any individuals from generation x before the diversity agenda was a force in corporate? Was Kyle given a team to manage so he could have some help? Or was he just given a bunch of technical work with no career path.

EVEN IF KYLE WAS MOVED BACK INTO CONTROLLERS AFTER I LEFT AND PUT IN CHARGE TO LEAD THE AUTOMATION EFFORT AS A VICE PRESIDENT, MUFG STILL DEMONSTRATED PAY DISCRIMINATION TOWARD ME BECAUSE AGAIN IM NOT JUST ARGUING FOR EQUAL PAY ON THE BASIS OF BEING PART OF A PARTICULAR DEMOGRAPHIC - ALTHOUGH THAT ARGUMENT CAN PROBABLY BE MADE TOO CONSIDERING MY 5 YEARS OF PROGRESSIVE EXPERIENCE TOGETHER WITH MY HISTORY AT THE BANK. RATHER, IM ARGUING THAT MY DEMOGRAPHIC WAS USED AGAINST ME WHICH LED TO SIGNIFICANT PAY DISCRIMINATION RELATING TO THE VALUE I INTRODUCED WHEN YOU CONSIDER THAT MY CONTRACT

WAS SHORT-TERM AND BELOW THE COST OF LIVING DESPITE MY OUTSIZED AND TRACEABLE ROLE IN INTRODUCING 2 MILLION DOLLARS INTO FP&A.

Some might point out that Jason (Asian) and Kate have kids now, but that argument doesn't work either since the bank has a provable history of discrimination against definitely myself, but possibly other white European males under 40 as validated by their payroll. As long as I am white, european, male and under 40, my argument is that they would have tried to take advantage of my demographic regardless of the value I brought and they showed that in my most recent contract.

There is another asian male employee there. I can't recall his name, but he started at the bank in 2015 and he is the only other young man I am aware of who is close to my age from prior to 2017. And he isn't trained in accounting.

The rest in my age bracket are women.

TO BE CLEAR, I REALIZE THAT THE UNDER-40 AGE BRACKET IS NOT A PROTECTED AGE. MY ARGUMENT MORE SPECIFICALLY IS THAT I WASN'T PAID PROPERLY FOR THE VALUE I INTRODUCED DURING MY MOST RECENT CONTRACT AND THAT THE COMPANY'S DIVERSITY AGENDA WAS WEAPONIZED/WIELDED IMPROPERLY WHICH LED TO PAY DISCRIMINATION BECAUSE SOMEONE WHO IS ASIAN, BLACK, A WOMAN OR OVER 40 WOULD CLEARLY HAVE BEEN PAID DIFFERENTLY BASED ON THE INFORMATION I AM PROVIDING ABOUT THE COMPANY. FURTHERMORE, SOMEONE WHO IS ASIAN, BLACK, A WOMAN OR OVER 40 WOULD HAVE HAD GROUNDS TO SUE FOR THEIR FULL WORTH - I AM NO DIFFERENT. I BELIEVE I WAS DISCRIMINATED AGAINST BECAUSE I WASN'T ASIAN, BLACK OR A WOMAN AND THEREFORE BECAUSE I AM WHITE, EUROPEAN AND MALE WHICH ARE ALSO PROTECTED TRAITS UNDER THE LAW. THE COMPANY DOES HAVE EXECUTIVES OVER 40 WHO ARE WHITE BUT THEY ALSO DID NOT INTRODUCE THE SAME VALUE AS ME SO YOU CAN'T REALLY USE THEM IN THIS CLAIM.

THE BANK MIGHT TRY TO ARGUE THAT MY EMAILS TO THE BANK WERE BEFORE MY EMPLOYMENT AT MUFG SO SOMEHOW MANAGEMENT ARE THE ONES WHO INTRODUCED AUTOMATION INTO BANK OPERATIONS, BUT THE REALITY IS THERE WAS NO GUARANTEE THE BANK WAS EVER GOING TO LOOK IN THE DIRECTION OF DESKTOP AUTOMATION - LET ALONE PUT A PRICE TAG ON IT - WITHOUT MY INVOLVEMENT AND THAT IS VERY CLEARLY SHOWN IN SEVERAL EMAILS I HAVE TO CHRIS ESCHER THE MUAH CONTROLLER. IT WAS ALSO CLEAR WHEN I ARRIVED FOR THE CONTRACT THAT NO ONE AT THE BANK HAD ANY PRIOR KNOWLEDGE OF MICROSOFT DESKTOP AUTOMATION DESPITE THE COMPANY HAVING TRANSITIONED TO MS TEAMS AND OFFICE 365 THE YEAR BEFORE.

Even the KPMG team I worked with/competed against to provide the bank with automation solutions was made up of one female manager, a female staff and a middle eastern staff member (I think). And they were paid more despite only providing up-to-half of the value between the three of them when you consider they were contracted by bank management to price the automation effort and, as far as I know, had no knowledge of Microsoft Desktop Automation before I introduced it to them.

Again - if my contract terms weren't so blatantly poor (i.e. under the cost of living and temporary) - despite me asking several times to convert to permanent - I probably wouldn't have cared as much about the demographics. But you can't openly discriminate against me and expect me not to sue. It doesn't make me racist, sexist or ageist to ask the company to recognize (financially and in full) my role introducing desktop automation to them knowing the current market reality for my demographic over the past five years and likely over the next five.

If the bank's whole premise is 'well, you have to have a family to get paid above the cost of living' - first of all, that wasn't true when I was at the bank 5 years ago - people made all kinds of money before children 5 years ago. Much more money than me. Vincent Cordera comes to mind but really everyone in generation x earned more between the age of 30 and 40. Second of all, I think I've shown in this claim that my earning growth was quite clearly stunted in 2017 at the age of 30 in large part because of MUFGs messaging at that time, which in practice translated into a very real missed opportunity for me at the next level. 5 years ago the messaging was to encourage diversity in management (i.e. jobs above the cost of living were being reserved for protected demographics). Now it's family? Or maybe it's diversity and family. Anyway you look at it, this type of social engineering creates an unequal employment environment which is why merit is so important to my case. Regardless of corporate politics, I believe I've earned a settlement on my professional contributions alone so that I can still have a chance at a home and a family considering my age if I receive a settlement.

----------------------------------------

Real world implications:

I worked at MUFG for over 4 years in my late 20s. My diverse colleagues (Jason & Kate) went on to have families after the policy was enacted in 2017 while I had two failed relationships between 30 & 35 because of money. And I

continue to struggle having a household of my own.

For example, I recently entered into escrow for a 250k house on a (3% down) FHA during the MUFG contract for a home in Burney California, but the seller wanted another 10k at the last moment so I was passed up in favor of another buyer. This just to show that my salary was not only from a temporary contract, but also well below the cost of living.

In regard to performance, I would argue I ended up being (at least) just as good as all of my colleagues on merit/performance over that period even though/ perhaps because I faced attrition everywhere I went between the ages of 30 & 35 because of my demographic.

And to ensure I don't miss a second opportunity to realize my full taxable potential, I think it would be worth exploring if I am entitled to a small percentage of the go-forward FP&A value that MUFG spends on automation - expressed again as a settlement. Since I will never be a bank executive, this is just me realizing my full earning potential while I can.

## Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

No one will support my claim because they are happily employed. However, I think once you get over the initial challenge of actually engaging leadership at the bank in a discussion, I don't think they would dispute any of the facts in my case.

To be clear, I don't really blame the current leadership and consider the discriminatory policy that was enacted in 2017 the work of the prior guard (when Rolland Jurgens was the controller).

Everyone at MUFG knows I was a high performer. And the diverse makeup of their payroll will serve as additional validation of my claim. Put another way, I was the only unprotected demographic starting in 2017 under a policy that was perpetuated a second time as shown by my temporary contract in 2022. Not only was the contract temporary, but it was also below the cost of living when you consider my age and experience.

Looked at from another angle, if you asked me to name a colleague around my age (35) who is white, European and male in a career management position who makes a salary between 110-150k, I would struggle as I was not aware of anyone in my demographic at MUFG during my recent contract who fits that profile.

Again - my argument is not simply about falling outside of a protected minority and being paid less/put in less favorable contracts than my diverse peers - although I think a stand-alone argument could be made that MUFG has not been an equal opportunity employer to me over my career. It is specifically about being underpaid for the value I introduced to the bank in 2021-2022 because of my demographic, which I think is the more flagrant violation of equal opportunity employment law and obviously puts me at an extreme disadvantage.

My contract wouldn't even let me bonus unless I was allowed to turn permanent. Seriously?

When I explained to senior management that I think my demographic was being vastly underrepresented in corporate - I was told I had 'given them a lot to think about'. My response to that is filing this charge because while they have the luxury of time to think about things and perhaps even true-up the careers of the next generation of young white males to the careers of their minority peers - I just blew a home purchase and need to worry about how I'm going to live another 5 years in a system that seems to be stacked against me.

This is why I am asking the federal government to step in because I am having a difficult time moving forward in the labor market despite my talent with these dynamics at play seemingly everywhere. The ask again is to be paid a settlement that makes sense for the outsized-value I brought to FP&A at MUFG, which again is 50% of KPMG's estimate if we are talking about true equality considering the facts presented in this case.

From a 'giving back' to the government perspective, I paid US federal taxes for almost 10 years, but my biggest financial value to the federal government as an individual would be the tax on this settlement if I am successful. If MUFG chooses to counter with the fact that the federal government can generate more tax revenue by sticking to the script instead of paying this settlement, I would invite the federal government to ask MUFG to either double the investment to 4M or wait a year to invest in automation as Microsoft continues to role out updates.

I would further argue that it is important to send a signal to companies to pay for desktop automation as it opens up another source of potential tax revenue (for all demographics) - especially as companies seek by any means to reduce headcount as we have seen in the last few months.

A settlement here would also right a wrong from an equal employment opportunity standpoint and give the government a chance to signal equality is important, productivity is important and gainful labor is important.

## Please tell us any other information about your experience?

I have been in the accounting industry for 10 years. With the recent evolution of microsoft desktop automation and being the one to introduce it to mainstream banking, my years of 'progressive' experience is right at half of that (5 years)

Additionally, my family spent a lot of money so that I could attend Saint Mary's College (SMC) and obtain my BS in accounting; much more money than many others in the field when you consider the cost of tuition at SMC. SMC also has a dedicated accounting program unlike other colleges/universities. Point being that I have a long history in accounting dating back to college. And when you pair my education with my contributions to MUFG (and outside of it), I think its pretty clear the issue has always been political.

Finally, I understand these decisions take time, but I want to say upfront that I am concerned about the length of time it will take to settle this claim. I believe a drawn-out claims process would be an injustice in and of itself that would disproportionately harm my family and my future. MUFG is a powerful company, but I think it should be held accountable. It is not a small business and I believe my demographic was used against me, which resulted in significant pay discrimination. Pay discrimination has also caused me to spend a significant amount of time below the cost of living in the past five years - something few of my boomer, generation x and millennial peers will be able to relate to at the same stage in life - which has adversely affected my health and I'm sure will continue to do so as I get older - despite greater-than-or-equal-to performance.

To be clear, I am not trying to prove I am an innovator or that I should be given credit for Microsoft desktop automation technology, but my achievements including 1) my initial recognition of Microsoft desktop automation in February 2021 2) my communication to a senior leader at the bank regarding Microsoft desktop automation in August 2021 3) my prior history at MUFG and 4) my progressive accounting & financial management experience since 2017 - show at the very least that I have demonstrable talent in finance, which went vastly under-compensated during my short-term, below-the-cost-of-living contract in 2022. The 2022 MUFG contract was the second time in five years that I was turned away from a permanent role that was above the cost-of-living because of my demographic and as such I believe I am entitled to half of the value I helped create.

The following statement is in capital letters to emphasize the importance of this claim for myself and my family:

I CANNOT USE A FULL HALF OF MY PROFESSIONAL EXPERIENCE IN BANKING (4+ YRS) PRECISELY BECAUSE THE DIVERSITY INITIATIVE AT MUFG UNION BANK IS KEEPING ME FROM BEING PAID A SALARY ABOVE THE COST OF LIVING IN THE BANKING INDUSTRY. THAT IS WHY I AM SEEKING TO BE PAID IN FULL FOR THE VALUE I BROUGHT TO MUFG DURING 2021 & 2022. PLEASE KEEP IN MIND THAT MICROSOFT DESKTOP AUTOMATION IS A GENERATIONAL TECHNOLOGY AND WILL BE CENTRAL TO THE BANKING INDUSTRY FOR THE REST OF MY WORKING CAREER. AND THROUGH A COMBINATION OF TALENT, CONNECTIONS AND PROGRESSIVE EXPERIENCE I WAS ABLE TO INTRODUCE THIS NEW TECHNOLOGY TO MUFG. FURTHERMORE, IN MY MOST RECENT CONTRACT, MUFG HAS SHOWN THAT (SIMILAR TO 2017) THEY CONTINUE NOT TO BE AN EQUAL OPPORTUNITY EMPLOYER TO ME SO I AM SEEKING PROTECTION FROM THE EEOC IN THE FORM OF (ENFORCING) A SETTLEMENT EQUAL TO MY OUTSIZED CONTRIBUTION TO THE BANK PLUS AT LEAST THREE YEARS OF LOST SALARY DUE TO A HISTORICALLY DISCRIMINATORY COMPANY POLICY AT MUFG (1.3 MILLION IN TOTAL). AS AN ASIDE, I HAVE NOTHING AGAINST MUFG OR ANYONE WORKING THERE, I AM JUST SEEKING TO BE PAID WHAT IM WORTH - WHICH IN THIS CASE HAPPENS TO BE QUITE A LOT. LASTLY, I BELIEVE THE FACTS IN THIS CASE ARE SO OVERWHELMINGLY IN MY FAVOR, THAT THE ONLY THING POSING A THREAT TO AN 'OPEN AND SHUT' WIN ARE PROCEDURAL SEMANTICS WHICH IS WHY I AM LOOKING TO THE EEOC (HAWAII & OAKLAND OFFICE) FOR GUIDANCE SO THAT IF THE FEDERAL GOVERNMENT DEEMS THE CASE LEGITIMATE, I AM ABLE TO FILE A CHARGE WITHIN THE PROPER TIME FRAME.

In regard to supporting documents for this claim, I have the following:

1) An email to my employer in February 2021 (at a company called AscendantFX Capital located in Canada) proving

that I was aware of the impact desktop automation was going to have in the accounting industry.

2) An email from myself to a senior leader at MUFG in August 2021, which illustrates that I introduced Microsoft Desktop Automation to MUFG well in advance of my actual employment which didn't begin until June 2022. Again, I believe the contract itself was discriminatory treatment and was based on my demographic and I believe my labor is worth exactly half of the labor put forth by the bank staff and KPMG relating to automation.

3) A scorecard that I sent my employer showing the results of the competition between myself and KPMG which shows that the value I added exactly offsets the value KPMG added during my 3-month contract there. The three person KPMG team I was competing against (none of whom were part of my demographic) got paid more than me for doing the same automation work even though the work had nothing to do with accounting and having a CPA didn't matter at all.

4) Emails proving that I attempted to buy a house in 2022 during my MUFG contract. This includes an email from my MUFG director talking about the house purchase to illustrate that MUFG was aware of my attempted home purchase. Management even agreed to letting me work remotely if I could close the house. The fact that I didn't close illustrating that my contract was below the cost of living.

5) I can give testimony to what was communicated in the 2017 all-hands meeting in Oakland when Rolland Jurgens was the presiding controller. He called for more diversity in management which meant more jobs above the-cost-of-living going to everyone who was not a white/European male under the age of 40.

Subsequent to this meeting, I lost a competition for a manager role that was given to a woman outside of the bank and I myself was quietly hired into unfamiliar roles that were undefined and would not have stood up in the next performance review.

---------------------------------------------------------------

I believe everything I've done in my career was done in a timely manner (including this claim) except being compensated fairly. And I believe a settlement is my last chance at changing that.

1) When I asked for a manager promotion at MUFG in 2017 in my late 20's after showing what I thought was progressive growth - that was timely.

2) When I didn't get the manager promotion at MUFG, but the out-going controller at the University of Puget Sound asked me to take treasury at the University of Puget Sound to audit in 2018-2019 at the org level and without leadership familiar with the prior year (and I did it successfully) - that was timely. As a side note, the ratio of women to men at University of Puget Sound was at least 15 to 1 when I was there.

3) After I came back to work in January 2021 (I had been out of work for 13 months) and found Microsoft desktop automation in February 2021 when Microsoft had only just made it generally available in December 2020 - that was timely.

4) The time I spent selling automation to MUFG Union Bank in 2021 & 2022 and the subsequent roll-out of automation at MUFG bank when they were in the middle of a sale to US Bank - that was timely.

5) When I tried to buy a 250k house on a 3% FHA loan during my MUFG contract because I saw automation was working and thought I had a shot at a longer term career - that was timely.

Since corporate politics keeps getting in the way of my career and life, I am asking the federal government to enforce a substantive settlement based on the facts in my case - most especially considering KPMG's independent quote in 2022 of 1.9 million dollars for automation over 12 months.

EEOC Form 5 (11/09)

| AMENDED CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | EEOC<br>FEPA | 555-2023-00720 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Michael Bonazza | 808-853-9023 | 4/18/87 |

Street Address

2092 kuhio avenue 2402

HONOLULU, HI 96815

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| MUFG Union Bank | 15 - 100 Employees | |

Street Address

1221 BROADWAY

OAKLAND, CA 94612

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address                          City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|---|
| | Earliest | Latest |
| Race, Sex | 06/13/2022 | 06/13/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In June 2022, I was contracted by Respondent, Richard Chris Escher, Controller/Managing Director, as a Reporting Analyst. During negotiations, I requested a permanent position with a salary of $110,000 to $150,000 but was given a $106,000 contract.

I also asked for a position with a Vice President role and was told that I did not fit Respondents profile and there is a long-standing company policy to fill management leadership position with diverse (non-White) qualified applicants.

I believe I was discriminated against because of my race (White) and sex (male), in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/22/2023            *Mike P*<br>Date            Charging Party Signature | SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>*(month, day, year)* |

RECEIVED

FEB 2 2 2023

U.S. EEOC - HONOLULU

Page 1 of 2

③

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Honolulu Local Office**
300 Ala Moana Blvd, Room 4-257
Honolulu, HI 96850
(808) 800-2350
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 02/22/2023

**To:** Mr. Michael Bonazza
2092 kuhio avenue 2402
HONOLULU, HI 96815
Charge No: 555-2023-00720

EEOC Representative and email:     RHONDA AKIMA MAYO
Investigator
RHONDA.AKIMA.MAYO@EEOC.GOV

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
02/22/2023
Christine Park-Gonzalez
District Director

**Cc:**
Jenifer Riley
MUFG Bank, Ltd
1221 Broadway
Oakland, CA 94612


Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 555-2023-00720 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor

Los Angeles, CA 90012.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
### Northern District of California

| | | |
|---|---|---|
| Michael Bonazza | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. |
| MUFG Union Bank | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION
### MUFG Union Bank

To: _____

_(Name of person to whom this subpoena is directed)_

☐ Testimony: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: ~~Oakland California Federal Court~~ | Date and Time: |
|---|---|
| | |

The deposition will be recorded by this method: _____

☐ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| | |
|---|---|
| _CLERK OF COURT_ | OR |
| _____ | _____ |
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____

_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $          0          .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).