Michael Bonazza

2092 Kuhio Ave Apt 2402

Honolulu HI 96815

808-853-9023


FILED
JUL 27 2023
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MICHAEL ALAN BONAZZA | Case No.: 3:23-cv-01161-JCS |
|---|---|
| Plaintiff, | Rule 56 – **Motion for summary judgement regarding the federal question** |
| v. | |
| MUFG UNION BANK, | Judge: |
| Defendant. | |

## FEDERAL QUESTION

Does <u>unintentional</u> sex/race disparity relative to employees who similarly have permanent experience at MUFG qualify as a failure to hire based on sex and race (because of a term included in Plaintiff's contract) if there is a <u>statistically significant</u> sex/race disparity at MUFG among similarly aged peers as of Plaintiff's 2022 contract, AND IF the playing field is level as evidenced by Plaintiff's 2022 contract (i.e. provision for permanent placement/ambiguous contract) BECAUSE of Plaintiff's business profile, including prior permanent placement and Plaintiff's demonstrable knowledge of a newly introduced technology,

which together make Plaintiff's business profile reasonably comparable to employees in CTS and Controller peer groups.

## PEER CLASS (AKA MOTION TO DEPOSE)

Plaintiff is requesting a list of employees which includes anyone he had commonality with when he worked at MUFG in a permanent capacity between 2013 and 2016 and who could have been considered a peer (under 40, permanently placed) to Plaintiff also in 2022. The requested details are outlined below.

1. Plaintiff is requesting a list of under 40, permanently placed employees that he worked with during 2013-2016 who were hired prior to Plaintiff working there and that were still under 40 and permanently placed as of 2022 (ie part of Plaintiff's peer class) AND a list of employees that worked at MUFG between 2013-2016, <u>including during Plaintiff's last full year of permanent employment during 2016-2017,</u> whom Plaintiff did not work with at that time, but could have been considered part of his peer class (under 40, permanently placed) upon his contract in 2022 either as part of the Controllers or as part of CTS.

2) Plaintiff is requesting a list of employees in the controller department hired permanently between 2013 and 2016 (4 years) who were still employed and under the age of 40 at MUFG Union bank as of Plaintiff contract in 2022.

3) Plaintiff is requesting a list of employees hired permanently at MUFG union bank between 2013 and 2016 (4 years) who were in the CTS department and under the age of 40 as of Plaintiff contract in 2022.

Peer Attributes:

1) Names

2) Race

3) Sex

4) Ethnicity

5) Date hired

6) Position/Title

7) Over 40/under 40 as of 2022

8) Were any employees in Plaintiff's peer class subject to a contract term after being permanently placed?

## **REASONABLE BELIEF**

1. It is reasonable to assume that Plaintiff could have become a peer in a permanent capacity to other CTS professionals with prior permanent experience and therefore reasonable to use the CTS population as a deciding factor when considering whether Plaintiff's termed contract (unintentionally) created a sex and race disparity because of a failure to hire.

2. It is reasonable to assume that Plaintiff could have become a peer in a permanent capacity to other controller professionals with prior permanent experience and therefore reasonable to use the controller population as a deciding factor when considering whether Plaintiff's termed contract (unintentionally) created a sex and race disparity because of a failure to hire.

3. BECAUSE the standard for reasonable belief is simply whether Plaintiff could have become permanent employee without consideration to any other factor (in other words without consideration to title, position, department, etc) and because the provision for permanent placement was stipulated in Plaintiff's contract.

### Regarding women/minorities in CTS as of Plaintiffs 2022 contract:

Women/minorities hired permanently between 2013 and 2016, and in Plaintiff's peer class as of Plaintiffs contract in 2022, were paid differently than white men hired in the same period because women/minorities hired during that time were not subject to a term after 4 years of permanent placement. And because Plaintiffs contract in 2022 was the same as his 2017 employment except for the term.

### Regarding women/minorities in Controllers as of Plaintiffs 2022 contract:

Women/minorities hired permanently between 2013 and 2016, and in Plaintiff's peer class as of Plaintiffs contract in 2022, were paid differently than white men hired in the same period because women/minorities hired during that time were not subject to a term after 4 years of permanent placement. And because Plaintiff's contract in 2022 was the same as his 2017 employment except for the term.

### FAILURE TO HIRE (SECTION VII)

Defendant's inclusion of a term in Plaintiff's 2022 contract, constituted a failure to hire based on race and sex because it paid Plaintiff's peer class, who were similarly under 40 as of 2022 and had acquired permanent MUFG experience at the time of Plaintiff's prior employment,

differently particularly considering Plaintiff's 2022 contract provision for permanent placement and the ambiguity of the contract relating to Plaintiff's job responsibilities.

## DISPARATE IMPACT

There was a statistically significant difference in Plaintiff's profile relative to peers in 2022 particularly since Dan Kinsella and Aaron Guisti were over 40 at the time of Plaintiff's 2022 contract, which made the sex/race disparity among Plaintiff peers more pronounced AND because Microsoft desktop automation technology introduced in 2021/2022 separated Plaintiff's business profile from Aaron and Dan when Plaintiff was interviewed for potential placement into the CTS group because Dan and Aaron were not part of CTS as defined during that time. The nature of Plaintiff's work with KPMG also had the effect of maintaining the difference in business profile between Dan/Aaron and Plaintiff because the nature of the work was different. Furthermore, regarding how white males/women/minorities hired between 2017 and 2022 were treated in comparison, Plaintiff has no claim/point of comparison because Plaintiff was not employed permanently at MUFG during that time.

## PROBABLE CAUSE

1. Implicit to arguing why an alleged 'set aside' (ie unfair economic arrangement) would qualify for a federal question, is the burden on Plaintiff to prove whether economic disparity existed relative to peers in protected demographics.

2. If Plaintiff can demonstrate probable cause that discriminatory conditions even unintentionally existed, the consequences of the outcome for Plaintiff are no different than an adverse change to contract and therefore no different than punitive damages awarded in other cases where discrimination is at issue. To the extent oppression exists from circumstances that

can be construed as discriminatory, like the effect of an adverse change in contract, the consequences for Plaintiff are again the same.

## 2022 CONTRACT PROVISIONS RELATED TO PRIOR PERMANENT PLACEMENT

Whether Plaintiff's five-year MUFG gap was considered in determining his 2022 contract, the result of including contract provisions related to permanent employment such as the provision to be placed permanently and the provision to bonus made Plaintiff's 2022 contract substantially similar to his prior permanent employment at MUFG. Importantly, MUFG's ability to exercise Plaintiff's contract provisions made Plaintiff more comparable to peers with permanent MUFG experience than to 1) a consultant representing a company like KPMG or Protiviti or 2) a contractor who might not have the same professional background in a permanent capacity at MUFG.

## 2022 CONTRACT AMBIGUITY

1. CONTRACT AMBIGUITY - Plaintiff's contract included ambiguous terms based on Plaintiff's prior experience, but did not specify which group Plaintiff would be joining. Plaintiff did not join a team while there, but instead worked with KPMG for the 3 months during his employment to introduce desktop automation solutions.

2. LEVEL PLAYING FIELD – Plaintiff could conceivably have become a peer to other permanently placed, under 40 MUFG employees because the provision for permanent placement 'leveled the playing field' with both peers who had prior permanent placement in Controllers and were still under 40 as of 2022 and peers who worked at MUFG during Plaintiff's prior employment during 2013-2016 who were permanently placed in CTS, under 40 as of 2022.

3. UNINTENTIONAL RACE & SEX DISPARITY - occurred because the playing field as defined above was not level as of 2022 between Plaintiff and Plaintiff's peers due to the term included on Plaintiff's contract.

## **REQUEST FOR SUMMARY JUDGEMENT**

After discovery of Plaintiff's temporary contract and a few other items (presumably in the September case management conference and after conferring with the lawyers), Plaintiff is requesting a motion for summary judgement based on Plaintiff's assertion in his complaint of a 'set aside' with peers and specifically whether the Court believes Plaintiff could reasonably have been compared to permanently placed peers with prior MUFG experience who are in CTS and/or the Controller ,or Treasury department as of Plaintiff's 2022 contract because of:

1) the permanent provision in Plaintiff's contract,

2) the ambiguity of Plaintiff's contract

3) AND whether the Court is in agreement on who Plaintiff could reasonably be compared to Employees at MUFG as of 2022 considering the class of individuals he either worked with in 2013-2016 or became a peer to in 2022 who similarly worked at MUFG during Plaintiff's employment between 2013-2016. Again, the issue (failure to hire based on race/sex in 2022) being there was an underrepresentation of Plaintiff race/sex relative to peers in that class, which led to a pay disparity with those peers because of Plaintiff's 2022 term. And in consideration to the fact that Plaintiff's management team was substantially similar. Erin Dickey, was the manager both times and she still reported to Chris Escher (controller) at the time of Plaintiff's contract.

4) AND whether the facts presented in Plaintiff's case constitute a failure to hire based on race and sex because of a statistically significant race/sex economic disparity between Plaintiff and those employees whom Plaintiff became a peer to (again) in 2022.

Michael Bonnzeq
7/21/2023
Mike D