United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALAN BONAZZA,<br><br>Plaintiff,<br><br>v.<br><br>MUFG BANK, LTD.,<br><br>Defendant. | Case No. 23-cv-01161-JCS<br><br>**ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND EXPUNGING SECOND ORDER TO SHOW CAUSE**<br><br>Dkt. no. 106 |

I.     **INTRODUCTION**

On May 10, 2024, Defendant filed a Motion for Protective Order, dkt. no. 106, providing evidence that Plaintiff has continued to engage in abusive and harassing litigation tactics and to ignore this Court's Orders addressing that conduct. On May 30, 2024, the Court issued a Second Order to Show Cause Why Case Should Not be Dismissed With Prejudice, dkt. no. 113 ("Second OSC"), with a response deadline of June 14, 2024.  Plaintiff filed a response to the Second OSC on June 10, 2024; Defendant filed a response on July 18, 2024.  Plaintiff did not file a response to the Motion for Protective Order; nor did Defendant file a reply.  A hearing on the Motion for Protective Order and Second OSC was held on August 2, 2024.  For the reasons stated below, the Court GRANTS the Motion for Protective Order and expunges the Second OSC.[1]  The Court is giving Plaintiff one more chance to follow the Court's orders not to email the Court's staff, and not to email employees of the defendant directly.  Failure to follow this Court's orders in the

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

future may result in the dismissal of this case with prejudice. In this order the Court sets a deadline for all parties to file summary judgment motion that comply with the Federal Rules of Civil Procedure.

## II. BACKGROUND

Plaintiff initiated this employment discrimination case in the District of Hawaii ("Hawaii Court") on February 23, 2023 and sought leave to proceed in forma pauperis under 28 U.S.C. § 1915. The Hawaii Court granted the motion but concluded venue was improper and therefore transferred the case to this Court. Dkt. nos. 11, 13. The Hawaii Court's screening review under 28 U.S.C. § 1915 was limited to the venue issue. Following assignment of the case to the undersigned, on April 23, 2023, the Court screened Plaintiff's claims and concluded that Plaintiff stated viable claims. Dkt. no. 30. The Court therefore ordered the United States Marshal to serve the complaint but also addressed the Plaintiff's filing of numerous documents unrelated to the case, ordering as follows:

> The Court FURTHER ORDERS that Plaintiff shall file no further documents in this case unless he has a reasonable and good faith belief that the document is permitted under the Federal Rules of Civil Procedure and the Civil Local Rules of this Court. Plaintiff has filed ten documents in the last week, with titles such as "My initial reaction to Microsoft desktop automation technology" (dkt. 23), "Initial reaction to Microsoft desktop automation technology and news commentary related to equity" (dkt. 24), "Justification for a 2 million dollar settlement" (dkt. 26), "Justification for a 2.8 million dollar settlement" (dkt. 27), "Justification for a 3 million dollar settlement" (dkt. 28), and "Communication with the bank about Microsoft Desktop more fun (emails)" (dkt. 29). To the extent these filings contain arguments and evidence in support of Plaintiff's claims, they are premature at this stage of the case. Failure to comply with this order will be grounds for the imposition of sanctions and may result in the revocation of Plaintiff's ECF filing privileges.

*Id.*

Plaintiff did not adhere to the Court's order, however, and therefore the Court ordered stricken a series of documents that were not authorized under the Federal Rules of Civil Procedure or the Court's local rules. *See* dkt. nos. 66, 70, 72, 74, 76, 79, 82. In addressing Plaintiff's improper filings, the Court issued another warning on July 18, 2023:

> THE COURT FURTHER CAUTIONS PLAINTIFF THAT HIS

> ONGOING ABUSIVE LITIGATION TACTICS AND DISREGARD FOR THE FEDERAL RULES OF CIVIL PROCEDURE, THE LOCAL RULES OF THE NORTHERN DISTRICT OF CALIFORNIA AND THIS COURT'S ORDERS MAY RESULT IN THE IMPOSITION OF SANCTIONS, UP TO AN INCLUDING DISMISSAL OF THIS ACTION WITH PREJUDICE.

Dkt. no. 76. On July 28, 2023, the Court further ordered as follows:

> Plaintiff has ignored the Court's repeated warnings and continues to engage in abusive litigation tactics, filing several improper documents and motions every day that must be manually docketed by the Clerk's Office and reviewed by the Court. These filings are imposing a significant burden on Defendant and the Court, and this burden is at the expense of other litigants with pending cases before the undersigned. Therefore, pending further order of the Court, no further filings from Plaintiff will be accepted from Plaintiff except ONE case management statement prior to the September 15, 2023 scheduled case management conference.

Dkt. no. 82.

In the meantime, Plaintiff repeatedly called and emailed Court staff for no legitimate purpose, prompting the Court to prohibit such communications. *See* dkt. no. 59. The Court stated:

> In the past 72 hours, Mr. Bonazza has sent more than 85 emails to court staff. These communications impose a significant burden on the Court and will no longer be permitted. Going forward, Mr. Bonazza is prohibited from emailing or telephoning Courtroom Deputy Karen Hom for any reason. All emails that have been received by Ms. Hom from Mr. Bonazza have been deleted and any future emails will be blocked. Emails to the Court are not part of the record of this case. Any future communications must be made in filed documents. Further, as the Court has already cautioned Mr. Bonazza, he may only file a document in this case if he has a reasonable and good faith belief that it is permitted under the Federal Rules of Civil Procedure and the Civil Local Rules of this Court. See dkt. no. 30. Documents that are not in compliance with those rules will be stricken from the record. All documents must be filed through the Clerk's Office. Mr. Bonazza is not permitted to efile in this case.

Dkt. no. 59.

At the September 15, 2023 Case Management Conference, the Court prohibited Plaintiff from sending emails to the Court and limited Plaintiff to two emails a week to opposing counsel. Dkt. no. 93. A status report re compliance filed by Defendant on December 8, 2023, dkt. no. 98, indicated that Plaintiff was not adhering to this limit. Among the numerous missives sent to counsel were multiple (15-20) versions of a Power Point presentation outlining Bonazza's "business case" with respect to his settlement demands. Dkt. no. 98 & Ex. G. According to

3

Defendant, "[w]hile unclear, the power point slides seem to suggest that Plaintiff believes he is entitled to a multi-million or even multibillion dollar settlement for reasons that are completely unrelated to his discrimination claim or his employment with Defendant (from which he voluntarily resigned), such as Amazon and JP Morgan's investments in Artificial Intelligence." *Id.*

The Court also continued to receive numerous emails from Plaintiff without any legitimate purpose. Therefore, the Court issued an Order to Show Cause Why Case Should Not be Dismissed with Prejudice. Dkt. no. 99. At that point, Plaintiff alerted the Court by email that he wished to file a motion to withdraw consent to magistrate jurisdiction and the Court promptly instructed the Clerk's Office that any such filing should be accepted. Dkt. no. 100. Plaintiff has not filed any such motion, however.

At the January 12, 2024 case management conference and show cause hearing, Plaintiff again agreed to limit his email communications and the Court expunged the order to show cause. Dkt. no. 102. But a status report from Defendant filed on February 9, 2024 indicates that Plaintiff continued to send Defendant numerous irrelevant emails (in the month that had elapsed since the show cause hearing Defendant had received 34 emails), many related his efforts to purchase a house and his plan to finance it with funds he hoped to obtain by settling this case. *See* dkt. no. 105.

Plaintiff's improper emails continued. For example, on February 26, 2024, Plaintiff sent at a series of emails to Defendant's counsel, starting with one at 8:11 a.m. stating: "If I win I will take up to the amount I owe my partner and for her medical, but I am effectively taking myself out of the picture after this week." At 9:59 a.m. he sent an email stating:

> Hi Nate,
>
> If the plan is to wait to make a decision in August, I'd like to enter a motion to dismiss my case.
>
> I'll go back to renting.
>
> Thanks,
>
> Mike

4

At 9:26 p.m. on the same day he sent an email to counsel stating: "I couldn't take the money even if I won if the timing is wrong." Two minutes later he sent an email to counsel stating: "The transaction is too egalitarian and the valuation is too big." On the same day, at 3:20 p.m. Plaintiff sent an email to the court stating: "Fyi. I will be seeking to a [sic] motion to close this case absent a settlement in the next week." No such motion was ever filed.

On May 6, 2024 at 10:57 pm, Plaintiff sent an email to the undersigned magistrate judge stating:

> Dear Magistrate,
>
> If im being honest, I think it's a disgrace that you're letting a foreign country clown America by not allowing me to win timely and decisively. Ryan Reynolds is out here doing a victory lap because he knows this country is weak.

Two minutes later, he sent the Court another email stating: "You let everyone get away with murder so that you can block homeownership for someone who deserves it. Why?"

On May 7, 2024 at 2:01 a.m. Pacific Time, Plaintiff sent the Court an email with the caption, "Disgraceful," stating: "I did my job. The question is will you." At 2:57 p.m. and again at 3:01 pm that same day, Plaintiff sent the Court an email entitled "Where is my f***ing opinion." On this email, Plaintiff also copied defense counsel and an individual who is Defendant's Controller and Chief Accounting Officer. The Court notes that at the time this email was sent there were no pending motions in the case.

Defendant filed its Motion for Protective Order on May 10, 2024. The supporting declaration of counsel states that the emails sent at 2:57 and 3:01 pm on May 7, 2024 (described above) "came *after* [Defendant's counsel] emailed [Plaintiff] on May 5, 2024 to explicitly remind him not to contact Mr. Escher or any other MUFG employees and to instead direct communications through [him and his] office." Declaration of Nathaniel H. Jenkins in Support of MUFG Bank, Ltd.'s Motion for Protective Order, dkt. no. 106-2 ("Jenkins Protective Order Decl.") ¶ 4 & Exs. B, C. Counsel further states that he has "asked Plaintiff *numerous* times, through email, by formal written correspondence, and over the phone, to please stop the burdensome, harassing emails." *Id.* ¶ 5. These requests include letters sent by counsel to Plaintiff

on August 16, 2023 and October 17, 2023. *Id.* ¶ 5 & Ex. D. Defendant's letters describe in detail Plaintiff's harassing conduct, which included sending "over 1,000 emails within only a few months," sending multiple versions of the same document, and on one occasion, filing what was purportedly a "joint" case management conference statement without Defendant's consent. *Id.*, Ex. D.

Counsel also describes the deposition of Plaintiff taken by Defendant on April 18, 2024, "after which [Bonazza] reached out several times about 'settlement' and even included a subject line of: 'I want more money.'" *Id.* ¶ 6 & Ex. F. According to counsel, "Plaintiff has made clear multiple times throughout this litigation that he is pursuing his claims to obtain settlement monies to buy a house." *Id.* In his deposition, Plaintiff stated: "I was, like, I want to buy this house, but I can't buy this house unless I'm successful in my employment litigation." *Id.*, Ex. F-8. Plaintiff also sent Defendant's counsel emails with the subject line, "I literally just want to buy a house," and other emails that repeatedly and urgently asked Defendant to "close" on a settlement. *Id.*, Ex. F-1.

In his deposition, Bonazza also appears to have conceded that his underlying claim that his employment contract was discriminatory is unfounded. In particular, he testified that "it was very clear to [him], after a couple of months, that [there was] nothing wrong with the contract." Declaration of Nathaniel H. Jenkins in Support of Defendant MUDG Bank, Ltd.'s Response to Second Order to Show Cause why Case Should Not be Dismissed with Prejudice, dkt. no. 116 ("Jenkins OSC Decl."), Ex. A (Bonazza deposition excerpt) at 46-47, 71-72. He further testified that he resigned from his position at MUFG because he "wanted to stay with credit cards because that's kind of where [his] strength was" but instead he was "pull[ed] . . . away from that" and "put on a couple of other projects." Jenkins Protective Order Decl., Ex. H-2 (Bonazza deposition excerpt) at 120-121).

Soon after Defendant filed its Motion for Protective Order, Plaintiff filed three motions for summary judgment, dkt. nos. 108, 109 and 111. Although the Court had previously issued to Plaintiff a notice "to explain to the pro se plaintiff how the summary judgment process works and the consequences if a summary judgment motion is granted in the defendant's favor[,]" dkt. no.

62, Plaintiff did not offer any evidence in support of his motions. Nor did he address any of the specific facts of the case. For this reason, the Court denied the motions on May 29, 2024, observing that "[n]o supporting brief was filed; nor did Plaintiff offer any evidence to support his request for summary judgment." Dkt. no. 112. The Court concluded, "Having failed to address his specific claim or offer any evidence or argument related to that claim, Plaintiff has not established that he is entitled to summary judgment based on the undisputed facts." *Id.*

On May 30, 2024, in response to the evidence supplied in support of the Motion for Protective Order, the Court issued a second order to show cause why the case should not be dismissed with prejudice due to Plaintiff's harassing and abusive conduct. Dkt. no. 113 ("Second Order to Show Cause"). The Court ordered that responses be filed by June 14, 2024.

Plaintiff filed a brief response to the Second Order to Show Cause on June 10, 2024, stating, in its entirety, as follows:

> This case should not be dismissed because of the merits of the case. Plaintiff has asked for summary judgment consistent with guidelines about timely justice.

Dkt. no. 114.

At the August 2, 2024 hearing, Plaintiff offered no justification for failing to comply with the Court's orders as to emails to Court staff and opposing counsel except to insist that he sent them to "get to the right answer" and to "drive[] the process forward" as the Court did not issue a decision on the merits in response to his February 9, 2024 status report, *see* dkt. no. 104, which he described as a summary judgment motion. The Court explained to Plaintiff that his status report did not conform to the requirements of the Federal Rules of Civil Procedure governing summary judgment motions and that treating a status report as a summary judgment motion would be improper, in response to which Plaintiff accused the Court of "corruption."

### III. WHETHER THE COURT SHOULD DISMISS THIS CASE UNDER ITS INHERENT POWERS

#### A. Legal Standards

"All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders . . . . As a function of this

1 power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess
2 fines." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir.
3 2001) (citations omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("outright
4 dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion.").
5 he orderly administration of justice." *Anheuser–Busch*, 69 F.3d at 348 (internal quotation marks
6 and citations omitted). "Before imposing the 'harsh sanction' of dismissal . . . the district court
7 should consider the following factors: '(1) the public's interest in expeditious resolution of
8 litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking
9 sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the
10 availability of less drastic sanctions.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)
11 (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)).
12 Further, "[f]or dismissal to be proper, the conduct to be sanctioned must be due to willfulness,
13 fault, or bad faith." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d at 348 (citations
14 and internal quotations omitted); *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)
15 (holding that "sanctions are available if the court specifically finds bad faith or conduct
16 tantamount to bad faith" and that "[s]anctions are available for a variety of types of willful actions,
17 including recklessness when combined with an additional factor such as frivolousness,
18 harassment, or an improper purpose.").

### B. Bad Faith

The evidence of bad faith in this case is ample. Plaintiff has repeatedly ignored the Court's orders and the requests of counsel with respect to his communications with counsel, the Court, and employees of MUFG Bank, sending thousands of unrelated emails, some of which are abusive in tone. This conduct has risen to the level of harassment and supports a finding of bad faith.

### C. Public Interest, Court's Need to Manage its Docket and Public Policy

In considering whether dismissal is appropriate, courts are instructed to balance the public's interest in expeditious litigation, the public policy in favor of resolving cases on the merits and the Court's need to manage its own docket. Because of Plaintiff's ongoing refusal to comply with the Court's orders with respect to his abusive and harassing litigation of the case, the

public's interest in expeditious litigation and the need to manage the Court's docket point in favor of dismissal. On the other hand, dismissal will prevent the Court from reaching the merits of the case, which is generally disfavored.

### D. Risk of Prejudice to Defendant

Defendant has presented evidence that Plaintiff's abusive litigation practices have imposed a significant burden on it, with counsel being forced to screen a large volume of communications that Plaintiff has sent and employees of Defendant's employees being subjected to abusive emails sent to them directly from Plaintiff. These voluminous and sometimes confusing emails make defending this case extremely burdensome and hamper the ability of counsel to effectively defend their client. Therefore, the Court concludes that Plaintiff's conduct has prejudiced Defendant.

### E. Availability of Less Drastic Sanction

The Court questions whether there is a less drastic sanction available that will be effective as it has repeatedly warned Plaintiff about his misconduct and ordered him to cease his abusive litigation practices and Plaintiff has consistently ignored those warnings.

## IV. CONCLUSION

The factors discussed above, on balance, support dismissal of this action under the Court's inherent powers. Because the Court is reluctant to deprive Plaintiff of the opportunity to obtain a ruling on the merits in this case, however, it will give him one more chance to proceed with the case so long as his abusive litigation tactics cease and he abides by the Court's orders going forward. Therefore, the Court GRANTS the Motion for Protective Order, expunges the Second OSC and orders as follows:

- Plaintiff is prohibited from sending emails to Court staff.
- Plaintiff's communications with Defendant relating to this case shall be solely through counsel; as Plaintiff agreed at the hearing, Plaintiff shall not contact directly any MUFG employee in connection with this case.
- Each side will be permitted to file one motion for summary judgment, which shall be filed by **September 3, 2024.** Opposition briefs will be due on **September 24, 2024.** Reply briefs shall be filed by **October 8, 2024. The Clerk is instructed to**

**accept for filing Plaintiff's motion papers in connection with these summary judgment motions.** The Court will determine after briefing is completed whether a motion hearing is required.

**Plaintiff's failure to comply with this Order with respect to email to the Court or contacting Defendant's employees may result in dismissal of this case with prejudice**.

**IT IS SO ORDERED.**

Dated: August 5, 2024

JOSEPH C. SPERO
United States Magistrate Judge