UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ALAN BONAZZA,

　　　　　Plaintiff,

　　v.

MUFG BANK, LTD.,

　　　　　Defendant.

Case No.　23-cv-01161-JCS

**ORDER RE SUMMARY JUDGMENT MOTIONS**

Re: Dkt. Nos. 121, 122

## I.　INTRODUCTION

　　　　The parties in this employment discrimination case have filed cross-motions for summary judgment.　For the reasons stated below, Plaintiff's summary judgment motion is DENIED. Defendant's motion for summary judgment is GRANTED.[1] This case is dismissed, in its entirety, with prejudice.

## II.　BACKGROUND

　　　　Plaintiff Michael Bonazza initiated this employment discrimination case against Defendant MUFG Bank, Ltd. ("MUFG") in the District of Hawaii on February 23, 2023.　That court transferred the case to this District and the undersigned screened Plaintiff's complaint under 28 U.S.C. § 1915.　The Court found that Bonazza asserted viable claims for employment discrimination based on race and sex under Title VII of the Civil Rights Act of 1964 and ordered the complaint served. *Id.*

　　　　In his Amended Complaint, Plaintiff, who is a white male, alleges that MUFG discriminated against him by offering him only a temporary position at MUFG based on his race

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

and sex whereas many of MUFG's permanent employees were women and non-white. Dkt. no.

37. Plaintiff's theory of the case has been a moving target throughout this case; it has often been

unclear whether he is asserting his discrimination claims based on a theory of disparate treatment

or disparate impact, and sometimes he seems to be asserting claims based on an alleged breach of

contract. *See, e.g.,* Declaration of Nathaniel H. Jenkins in Support of Defendant MUFG Bank,

Ltd.'s Motion for Summary Judgment ("Jenkins Decl."), Ex. A (Bonazza Dep.) at 46 ("I was

trying to prove it as hard as I could, disparate impact[.]"); *id.* at 48 (testifying that disparate

treatment claim was based on "giving [Bonazza] a termed contract . . .  it was restrictive when

comparing [himself] to peers."); *id.* at 71 ("what I'm asking is that the bank reevaluate my

contract" because "I don't believe that contract was priced correctly" in light of "the incremental

skills that I brought to the job.").[2] Further, Bonazza's deposition testimony suggests he filed this

case simply to extract a settlement from MUFG without a good faith belief that his allegations of

race and sex discrimination were valid. *Id.* at 44 ("I initially filed the lawsuit because I felt there

was value in the work, and if I couldn't get it through a job, I -- I wanted to somehow get it

through the court system. You know, like that was literally my thought.").

The basic facts relating to Bonazza's employment history with Defendant appear to be

undisputed.[3] Between 2013 and 2017, Bonazza was employed as a Technical Accountant by

MUFG Union Bank, N.A. ("Union Bank"), the predecessor of Defendant MUFG Bank, Ltd. *Id.*

at 101-105. Although he initially accepted a temporary position, his position with Union Bank

became permanent in August 2013, carrying an annual salary of $72,000 a year. *Id.* Bonazza

---

[2] Bonazza conceded at his deposition, however, that "there was nothing wrong with the contract." *Id.* at 47. As Bonazza did not assert a breach of contract claim in the operative complaint, the Court finds that there is no pending breach of contract claim in this case. In any event, Bonazza has not pointed to any evidence of a breach of contract or articulated any legal theory that might support such a claim. Nor has the Court found any authority to suggest that it could (or should) retroactively modify the terms of Bonazza's contract to increase his compensation for the work he performed at Union Bank in 2022.

[3] Much of the evidence establishing these facts was offered by MUFG in support of its summary judgment motion, dkt. no. 122 ("MUFG Motion"). Although Bonazza did not oppose the MUFG Motion, he submitted some evidence to support his own summary judgment motion, dkt. no. 121 ("Bonazza Motion"). The Court treats facts as undisputed only where the evidence Bonazza submitted does not conflict with MUFG's evidence. Where any of the evidence offered by MUFG is controverted by Bonazza's evidence the Court notes as much.

1    received positive performance reviews but voluntarily resigned from his position with Union Bank

2    in October 2017 due to the work there. *Id.* at 120-129. Bonazza testified that he did not leave his

3    position with Union Bank because he was treated unfairly. *Id.* at 125.

4        Between October 2017 and May 2022, Bonazza worked sporadically. *Id.* at 87-88, 129-

5    159. He took a position as an accounts payable clerk at a company in British Columbia, Canda in

6    January 2021 and resigned from that position in July 2021. *Id.* at 148-152. That job paid an

7    annual salary of between $40,000 and $45,000. *Id.* at 148-149. He then moved to Hawaii and got

8    a job as an accounting manager with Helber, Haster & Fee ("HHF") & Dep. Ex. 4 (resume). *Id.* at

9    153. His salary in this position was between $60,000 and $65,000. *Id.* at 155.

10       In the meantime, in September 2021, Bonazza got in touch with Chris Escher, of Union

11   Bank, to inquire about opportunities to return to Union Bank. *Id.* at 169 & Dep. Ex. 14. Initially

12   Escher told Bonazza that he could not offer him anything because the acquisition of Union Bank

13   by U.S. Bank was underway, but he told Bonazza to check back. *Id.* at 170. Bonazza emailed

14   Escher again on March 7, 2022, while still employed by HHF, to send him his updated resume.

15   *Id.* at 172. Escher told Bonazza about a temporary position at Union Bank and Bonazza

16   subsequently received an email from a Union Bank recruiter inviting him to apply for a "term

17   employment" opening at Union Bank as a Financial Reporting Project Specialist. *Id.* at 173-175

18   & Dep. Exs. 15-16. The recruiter sent the job description for the position, which explained that

19   "[t]erm employment is an employment status in which the Bank hires an individual for a

20   designated period of time, not exceeding 2 years." *Id.*

21       Bonazza applied for the temporary position and received an offer. *Id.* at 174-175 & Dep.

22   Ex. 17. The offer letter, dated May 6, 2022, stated that the term of the position was from June 13,

23   2022 to October 13, 2023. *Id.* at 179-180 & Dep. Ex. 17. It further stated that "[u]pon mutual

24   agreement, your Term Employment period may be extended for an additional term (not to exceed

25   a combined total of two years) under the same terms and conditions set forth in this offer letter."

26   *Id.* The salary for the temporary position was $106,00 a year, which Bonazza described as a

27   "fantastic salary." *Id.* at 181-182. He testified that although he understood the position was

28   temporary, he "was expecting a very fast transition" to a permanent position. *Id.*

United States District Court
Northern District of California

3

1    Bonazza accepted the position, even though it was temporary, because he "had no

2    leverage." *Id.* at 183. He did not apply for any permanent position with Union Bank at that time

3    or subsequently, however; nor was he aware of any such position. *Id.* at 201-204. He also is not

4    aware of any white males who have applied for a permanent position with Union Bank and not

5    been hired. *Id.* at 204.

6        Bonazza relocated from Hawaii to Oakland to take the temporary position, working out of

7    the same office he had worked from between 2013 and 2017. *Id.* at 180-181, 184. He testified

8    that there was no one else at Union Bank performing similar work and that this position was

9    "unique." *Id.* at 190. In September 2022, just three months into the 16-month term, Bonazza

10    resigned in order to move back to Hawaii with his girlfriend. *Id.* at 196-198. His email notifying

11    Union Bank of his resignation states as follows:

12        Hi Erin, Happy Weekend.

13        I just want to take the time in this note to thank you and Chris so much
         for bringing me back to the bank after so many years.
14
15        My memories at the bank, though short-lived, are good ones both then
         and now.

16        As you might imagine, I have been thinking about where I want my
17        life to be over the next 5 years. The answer for me is definitely with
         my girlfriend in Hawaii. It is with that in mind that I would like my
18        last day to be Monday (tomorrow).

19        In regard to the work, I've given Sam what I have for the piece of 66.2
         that I worked on. They should be able to have a successful call on
20        Tuesday with Vidia because they put in all the work.

21        Thank you again so much for allowing me the opportunity to be part
         of the team and prove myself.

22        Talk to you tomorrow.

23        Mike

24    *Id.* at 196-197 &  Dep. Ex. 19.

25        On January 24, 2023, Bonazza submitted an informal Inquiry form to the Equal

26    Employment Opportunity Commission ("EEOC") and received a Right to Sue on or about

27    February 22, 2023, after filing an administrative Charge of Discrimination. *Id.* at 74-79 & Dep.

28    Ex. 1.

III.    THE MOTIONS

    A.    MUFG Motion

In its summary judgment motion, MUFG argues that Bonazza's Title VII claims fail as a matter of law based on the undisputed facts.  MUFG addresses both Bonazza's disparate treatment theory and his disparate impact theory under Title VII.  MUFG argues as to both theories that Bonazza's discrimination claims fail because he cannot make a prima facie case of discrimination.[4]  MUFG further asserts that there is no legal theory that supports a breach of contract claim  to recover what Bonazza now claims was the value of his work in excess of the salary he was paid, arguing that the undisputed evidence establishes that MUFG paid Bonazza the salary promised under the contract, to which Bonazza agreed.

Bonazza did not file an opposition to the MUFG Motion.

    B.    Bonazza Motion

Bonazza argues in his summary judgment motion that he is entitled to judgment as a matter of law on his discrimination claim based on disparate treatment, alleging that his "class was 10 to 1 non-white European male to white European male."  Bonazza Motion at 1. Bonazza attached various documents to his motion, including:

- screen shots of the LinkedIn pages of eight individuals who appear to be women and/or non-white and list MUFG as their current place of employment;
- emails Bonazza exchanged with Chris Escher and Erin Dickey;
- the May 6, 2022 offer letter for the temporary position;
- employment records from Bonazza's previous tenure at Union Bank, between 2013 and 2017;
- Bonazza's September 25, 2022 email resigning from the temporary position;
- An article entitled, "The 5 Year Statute of Limitations for Government Enforcement Actions for Civil Penalties: Recently Settled and Still Unsettled

---

[4] MUFG also argued in the motion that the Title VII claims fail because Bonazza's EEOC charge was untimely.  In its Reply brief, however, MUFG withdrew those arguments. Dkt. no. 125 (MUFG Reply) at 2 n. 1.

United States District Court
Northern District of California

1    Issues Regarding 28 U.S.C. Section 2462;"[5]

2    • Articles about gender inequality, including one entitled, "The Crisis of Men and

3    Boys;"

4    • A list "showing employee demographics at MUFG" listing ten individuals who are

5    purportedly MUFG employees, along with their gender and ethnicity,

6    accompanied by a group photograph of those individuals wearing MUFG T-shirts.

7    MUFG filed an opposition objecting to all of Bonazza's evidence on the basis that it is not

8    properly authenticated.[6]  It further asserted that Bonazza's motion is frivolous and is supported by

9    neither admissible evidence nor legal authority.  Bonazza did not file a reply brief.

10   **IV.    ANALYSIS**

11        **A.    Legal Standards**

12             **1.    Rule 56**

13        Summary judgment on a claim or defense is appropriate "if the movant shows that there is

14   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

15   law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

16   the absence of a genuine issue of material fact with respect to an essential element of the non-

17   moving party's claim, or to a defense on which the non-moving party will bear the burden of

18   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

19        Once the movant has made this showing, the burden then shifts to the party opposing

20   summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*.

21   (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

22   disputed must support the assertion by . . . citing to particular parts of materials in the record

23   . . . .").  "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

24   substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v.*

25   ────────────────

26   [5] Bonazza does not explain the relevance of this statute to his claims and the Court finds that it has
     no bearing on this case. Section 2462 sets a five year limitations period on "proceeding for the
27   enforcement of any civil fine, penalty, or forfeiture[.]"  28 U.S.C. § 2462.  However, Title VII
     does not provide for civil fines, penalties or forfeitures.
28   [6] The Court assumes that Bonazza's evidence is admissible but need not decide that question as all
     of his claims fail on other grounds.

United States District Court
Northern District of California

1    *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of

2    identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan*

3    *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court to scour the

4    record in search of a genuine issue of triable fact.  *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237

5    F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

6          On summary judgment, the court draws all reasonable factual inferences in favor of the

7    non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not

8    find for the non-moving party based on the record as a whole, there is no "genuine issue for trial"

9    and summary judgment is appropriate.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

10   587 (1986).

### 2.  Employment Discrimination Under Title VII

12         Title VII makes it an unlawful employment practice "to fail or refuse to hire or to

13   discharge any individual, or otherwise to discriminate against any individual with respect to his

14   compensation, terms, conditions, or privileges of employment, because of such individual's race

15   [or] sex," among other protected categories. 42 U.S.C. § 2000e-2. At summary judgment, Title VII

16   discrimination claims are analyzed under the three-step burden-shifting framework in *McDonnell*

17   *Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th

18   Cir. 2008).  At the first step, the employee must establish a prima facie case of discrimination.  *Id.*

19   If the employee meets that burden, the analysis proceeds to the second step, at which the employer

20   must articulate a legitimate, nondiscriminatory reason for the challenged action.  *Id.*  At the third

21   step, the employee "must show that the 'reason is pretextual "either directly by persuading the

22   court that a discriminatory reason more likely motivated the employer or indirectly by showing

23   that the employer's proffered explanation is unworthy of credence." ' " *Id.* (quoting *Chuang v.*

24   *Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs*

25   *v. Burdine*, 450 U.S. 248, 256 (1981))).

26         Generally, to make a prima facie case of disparate treatment discrimination under Title

27   VII, a plaintiff must establish that (1) they are a member of a protected class under Title VII

28   because of their "race, color, religion, sex, or national origin;" (2) they suffered an adverse

United States District Court
Northern District of California

7

1    employment action; (3) at the time of the adverse action, they were performing their job in a

2    satisfactory manner; and (4) the adverse action occurred under circumstances suggesting a

3    discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-05; 42 USC § 2000e-

4    2(a)(1)-(2). Where a disparate treatment discrimination claim is based on failure to hire, a plaintiff

5    must establish the following specific elements: (1) they are a member of a protected class; (2) they

6    applied for and were qualified for a job for which the employer was seeking applicants; (3) they

7    were rejected despite being qualified for the job; and (4) after the plaintiff's rejection, the position

8    remained open and the employer continued to seek applicants from persons of comparable

9    qualifications. *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)). Alternatively, a

10   prima facie case of discrimination can be made if a plaintiff demonstrates that (1) they are a

11   member of a protected class; (2) they applied for a position for which they were qualified; and (3)

12   a person who was not within a protected class with similar qualifications received the position.

13   *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987).

14           To make a prima facie case of disparate impact discrimination under Title VII, a plaintiff

15   must "identify a specific, seemingly neutral practice or policy that has a significantly adverse

16   impact on persons of a protected class." *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1486 (9th Cir.

17   1993). "[T]he requirements of a prima facie disparate impact case . . . are in some respects more

18   exacting than those of a disparate treatment case." *Id.* (quoting *Spaulding v. University of

19   Washington*, 740 F.2d 686, 705 (9th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1036 (1984)).

20   The court in *Garcia* explained that "[i]n the disparate treatment context, a plaintiff can make out a

21   prima facie case merely by presenting evidence sufficient to give rise to an inference of

22   discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973)). In

23   contrast, in a disparate impact case, "plaintiffs must do more than merely raise an inference of

24   discrimination before the burden shifts; they 'must actually prove the discriminatory impact at

25   issue.'" *Id.* (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). "In the

26   typical disparate impact case, in which the plaintiff argues that a selection criterion excludes

27   protected applicants from jobs or promotions, the plaintiff proves discriminatory impact by

28   showing statistical disparities between the number of protected class members in the qualified

United States District Court
Northern District of California

1   applicant group and those in the relevant segment of the workforce." *Id.* (citing *Wards Cove*

2   *Packing Co. v. Atonio*, 490 U.S. 642, 650 (1989)).

3       **B.    Discussion**

4       Although Bonazza insists that he is asserting a disparate treatment claim, that claim fails

5   because he has identified no legally cognizable adverse employment action.  "[A]n adverse

6   employment action is one that 'materially affect[s] the compensation, terms, conditions, or

7   privileges of . . . employment.' " *Davis v. Team Elec. Co*., 520 F.3d at 1089 (quoting *Chuang v.*

8   *Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)).  "Adverse

9   employment actions are not limited to termination and may include actions such as hires, transfers,

10  promotions, [and] demotions.*"  Szalay v. Bd. of Supervisors, Cnty. of Pima*, No. CV02-479-

11  TUCJMR, 2008 WL 880551, at *5 (D. Ariz. Mar. 28, 2008). Bonazza has cited no authority,

12  however, that supports his position that hiring an individual for a temporary position constitutes an

13  adverse employment action under Title VII.  Nor has the Court found any such authority.

14  Furthermore, to the extent that Bonazza relies on the theory that the adverse employment action

15  was MUFG's failure to hire him for a permanent position, he has not established a prima facie

16  case on that theory because he does not allege – much less present any evidence – that Union Bank

17  was hiring for a permanent position or that he applied for any such position.  Indeed, he conceded

18  at his deposition that he knew of no such position and did not apply for a permanent position with

19  Union Bank.

20      Bonazza's disparate impact claim is similarly deficient.  Construing his claim liberally,

21  Bonazza's claim might fit within the disparate impact framework to the extent he is alleging that

22  MUFG has a policy or practice of hiring white males for temporary positions while preserving the

23  permanent positions for women and non-white individuals, leading to the outcome Bonazza

24  contends can be seen at Union Bank, namely, a permanent work force that favors women and non-

25  white individuals over white men.  The problem with this claim is that he has presented no

26  evidence that such a practice exists.  Bonazza concedes that he is not aware of any white man who

27  applied for a permanent position and was turned down and Bonazza himself did not apply for a

28  permanent position, as discussed above. Nor is there any statistical evidence in the record about

United States District Court
Northern District of California

United States District Court
Northern District of California

the race and/or gender breakdown of individuals who have applied for temporary vs. permanent positions with MUFG or the outcomes of those applications.  Finally, the LinkedIn pages of a small number of MUFG employees (even assuming they are admissible) offer no support for his disparate impact claim because Bonazza has provided no reliable statistical information to provide context for this evidence.  Consequently, no inference of disparate impact discrimination can be drawn from that evidence.

Because Bonazza has not made a prima facie case of discrimination based on disparate treatment or disparate impact, he cannot prevail on his Title VII claims and no issues remain to be tried.

## V.    CONCLUSION

For the reasons stated above, Defendant's summary judgment motion is GRANTED.  Bonazza's summary judgment motion is DENIED.  This case is dismissed with prejudice.  The Clerk is instructed to enter judgment in favor of MUFG and close the case.

**IT IS SO ORDERED.**

Dated: January 6, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge